KENNETH B. WILSON (SBN 130009)
kwilson@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444

Attorneys for Plaintiffs
EXCELSTOR TECHNOLOGY, INC.,
EXCELSTOR TECHNOLOGY LIMITED,
EXCELSTOR GROUP LIMITED,
EXCELSTOR GREAT WALL TECHNOLOGY LIMITED and SHENZHEN EXCELSTOR TECHNOLOGY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EXCELSTOR TECHNOLOGY, INC., a Delaware corporation; EXCELSTOR TECHNOLOGY LIMITED, a Hong Kong corporation; EXCELSTOR GROUP LIMITED, a Cayman Islands corporation; EXCELSTOR GREAT WALL TECHNOLOGY LIMITED, a Cayman Islands corporation; and SHENZHEN EXCELSTOR TECHNOLOGY LIMITED, a Chinese corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PAPST LICENSING GMBH & CO. KG, a German corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. C09-2055 PJH<br><br>**AMENDED COMPLAINT FOR DECLARATORY RELIEF RE PATENT UNENFORCEABILITY, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH, AND FRAUDULENT CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs ExcelStor Technology, Inc., ExcelStor Technology Ltd., ExcelStor Group Limited, ExcelStor Great Wall Technology Limited, and Shenzhen ExcelStor Technology Limited (collectively, "Plaintiffs" or "ExcelStor") hereby allege for their Complaint against defendant Papst Licensing GmbH & Co. KG ("Defendant" or "Papst"), on personal knowledge as to their own

activities and on information and belief as to the activities of others, as follows:

## THE PARTIES

1. Plaintiff ExcelStor Technologies, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1500 Kansas Avenue, Suite 1-C, Longmont, Colorado.

2. Plaintiff ExcelStor Technology Limited is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Suite 1507, Greenfield Tower, Concordia Plaza, No. 1 Science Museum Road, Tsimshatsui, Kowloon, Hong Kong.

3. Plaintiff ExcelStor Group Limited is a corporation organized and existing under the laws of the Cayman Islands, with its registered office at Scotia Centre, 4th Floor, P.O. Box 2804, George Town, Grand Cayman, Cayman Islands.

4. Plaintiff ExcelStor Great Wall Technology Limited is a corporation organized and existing under the laws of the Cayman Islands, with its registered office at Scotia Centre, 4th Floor, P.O. Box 2804, George Town, Grand Cayman, Cayman Islands.

5. Plaintiff Shenzhen ExcelStor Technology Limited is a corporation organized and existing under the laws of China, with its principal place of business at 5/F Kaifa Complex, Phase 2, 7006 Caitian Road North, Futian District, Shenzhen, China.

6. Collectively, the ExcelStor companies are leaders in the design, development, manufacture and distribution of hard disk drive ("HDD" or "hard disk") products, primarily in China. In fact, ExcelStor is the only HDD producer with its own brand in China. ExcelStor has also acted as a "contract manufacturer" for various companies, including Hitachi Global Storage Technologies Singapore Ltd. and its affiliates such as Hitachi Data Systems and Hitachi, Ltd. ("Hitachi").

7. Defendant Papst Licensing GmbH & Co. KG is a privately held corporation organized under the laws of the Federal Republic of Germany with its principal place of business at Bahnhofstr. 33, 78112 St Georgen, Germany. Papst is a patent holding company that acquires and enforces patents, but does not develop, manufacture or distribute a product of its own. As part of

its activities, Papst has become the assignee of several United States Patents involving HDDs, including: Nos. B1 Re. 32,702; 4,519,010; 4,535,373; 4,922,406; 5,708,539; 5,729,403; Re. 35,792; 5,777,822; 5,796,548; 5,216,557; 5,424,887; 5,446,610; 5,557,487; 5,661,351; 5,801,900; 5,864,443; Re. 34,412; and Re. 37,058 (collectively, the "Papst HDD Patents").

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of ExcelStor's claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367, as the claim for declaratory relief of patent unenforceability arises out of the patent laws of the United States, and the remaining claims are so related to the patent unenforceability claim that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391 because, among other reasons, defendant Papst is an alien, and a substantial part of the events giving rise to ExcelStor's claims occurred in this district.

## INTRA-DISTRICT ASSIGNMENT

10. Pursuant to Local Rules 3-2(c) and 3-5, this action may be assigned to any division of this district because it is an Intellectual Property Action.

## FACTUAL BACKGROUND

11. As noted above, Plaintiffs are in the business of developing, manufacturing and distributing computer products, including HDDs. As part of its business, ExcelStor has been a contract manufacturer of HDDs for Hitachi. As the contract manufacturer for Hitachi, ExcelStor has manufactured hard drives according to Hitachi's designs and then sold them to Hitachi ("Hitachi-ExcelStor Contract Drives").

12. In 2002, Papst filed suit against ExcelStor for infringement of the Papst HDD Patents in the U.S. District Court for the Central District of California (the "ExcelStor Lawsuit"). The accused products in the ExcelStor Lawsuit included products that ExcelStor was contract

manufacturing for Hitachi. However, Hitachi itself was not named as a party to the ExcelStor Lawsuit.

13. Effective January 1, 2003, Papst entered into a royalty licensing agreement for some or all of the Papst HDD Patents with Hitachi (the "Hitachi License Agreement"). Under the Hitachi License Agreement, Hitachi paid a lump sum royalty in exchange for a perpetual license to use the Papst HDD Patents in connection with its manufacturing and distribution of HDDs.

14. The Hitachi License Agreement included "have made" rights that were designed to enable Hitachi to use a contract manufacturer, like ExcelStor, to make licensed products based upon Hitachi designs without either Hitachi or the contract manufacturer paying further royalties. ExcelStor is informed and believes that the "have made" rights were inserted into the Hitachi Agreement at the specific request of Hitachi, which told Papst that it wanted its license to cover its contract manufacturers like ExcelStor, and Papst knew that the "have made" rights were an essential part of the Hitachi License Agreement.

15. On January 20, 2004, Papst and ExcelStor entered into a written Agreement to settle the ExcelStor Lawsuit (the "ExcelStor Agreement"). The ExcelStor Agreement provided that ExcelStor would make royalty payments to Papst on each HDD that ExcelStor made or sold through the expiration date of the Papst HDD Patents in exchange for a license to the Papst HDD Patents.

16. The ExcelStor Agreement specifically provided that ExcelStor would pay a per-unit royalty for each HDD that ExcelStor "contract manufactures" for its customers, such as Hitachi. The ExcelStor Agreement further required Papst to give ExcelStor written notice on a quarterly basis as to whether Papst had been paid a royalty by anyone other than ExcelStor for the HDDs that ExcelStor "contract manufactures" for ExcelStor customers, and in the event that Papst had obtained such a royalty, Papst was obligated to reimburse ExcelStor's royalty payments for those HDDs.

17. In addition, although Papst had patent protection in the United States and a handful of other countries, Papst insisted that the scope of Licensed Products include all hard disk drive units "manufactured or sold by any one of the ExcelStor Entities any place in the world at any time (irrespective of where such HDDs are manufactured or sold)," and required that ExcelStor pay

Papst a patent royalty payment for each Licensed Product or Contract Manufactured Product "manufactured or sold by any one of the ExcelStor entities any place in the world." In other words, Papst required ExcelStor to pay patent royalties for products manufactured and sold in countries in which Papst had no patent protection.

18. Following execution of the ExcelStor Agreement, Papst collected more than $7,989,360 in royalties from ExcelStor for products that ExcelStor manufactured for Hitachi, and for which Hitachi had already paid royalty payments to Papst under the Hitachi License Agreement. However, Papst has failed to provide ExcelStor with the required written notice under the ExcelStor Agreement that it has collected double royalties, nor has it reimbursed ExcelStor for the royalty payments ExcelStor made for products contract manufactured for Hitachi as mandated by the ExcelStor Agreement. Moreover, Papst collected significant patent royalties from ExcelStor for products that ExcelStor manufactured and sold in countries in which Papst has no patent protection.

19. ExcelStor was not aware of, nor informed about, the fact that Hitachi already paid for and received a license for the ExcelStor-Hitachi Contract Drives at the time ExcelStor entered into the ExcelStor Agreement.

**<u>FIRST CAUSE OF ACTION</u>**

(Declaratory Relief of Patent Unenforceability Based on Patent Misuse)

20. ExcelStor repeats and realleges each of the allegations set forth in Paragraphs 1 through 19 of this Complaint as if fully set forth in this Paragraph.

21. Since 2004, Papst has collected royalties from ExcelStor under the ExcelStor Agreement for the manufacture of products purportedly covered by the Papst HDD Patents, although Papst had already collected royalties from Hitachi under the Hitachi License Agreement for ExcelStor's manufacture of the very same products. Papst has also collected patent royalties from ExcelStor under the ExcelStor Agreement for the manufacture and sale of products in countries in which Papst has no patent protection.

22. By improperly collecting royalties on ExcelStor's manufacture and sale of HDD products as set forth in Paragraph 21 above, Papst has impermissibly broadened the physical or

temporal scope of the patent grant for the Papst HDD Patents with anticompetitive effect, thereby rendering the Papst HDD Patents unenforceable due to patent misuse.

23. Papst denies some or all of the allegations in Paragraphs 20-22 above. Therefore, a valid and justiciable controversy has arisen and exists between ExcelStor and Papst. ExcelStor desires a judicial determination and declaration regarding the enforceability of the Papst HDD Patents and the parties' respective rights and obligations concerning such patents, and such a determination is necessary and appropriate at this time.

**SECOND CAUSE OF ACTION**

(Unfair Business Practices)

24. ExcelStor repeats and realleges each of the allegations set forth in Paragraphs 1 through 23 of this Complaint as if fully set forth in this Paragraph.

25. Papst's licensing practices as set forth above constitute an unfair business practice under Business & Professions Code Section 17200.

26. As a result of Papst's unfair business practices, ExcelStor is entitled to temporary, preliminary and/or permanent injunctive relief barring Papst from further engaging in its unfair and unlawful licensing practices. In addition, ExcelStor is entitled to restitution in an amount in excess of $10,600,000, which represents the amount of royalties that Papst has improperly collected from ExcelStor by virtue of its unlawful business practices and on patents that are unenforceable due to Papst's acts of patent misuse.

**THIRD CAUSE OF ACTION**

(Breach of Contract)

27. ExcelStor repeats and realleges each of the allegations set forth in Paragraphs 1 through 26 of this Complaint as if fully set forth in this Paragraph.

28. On January 20, 2004, ExcelStor and Papst entered into the ExcelStor Agreement, which constitutes a valid, binding agreement between the parties.

29. ExcelStor has performed all of its obligations under the ExcelStor Agreement, except those obligations that it was prevented or excused from performing.

30. Papst has breached the ExcelStor Agreement by, among other things, failing to provide notice to ExcelStor that Hitachi had already paid to Papst a royalty for Hitachi-ExcelStor Contract Drives, and refusing to reimburse ExcelStor for royalty payments made for Hitachi-ExcelStor Contract Drives to the extent that Papst had previously received royalty payments from Hitachi.

31. As a direct and proximate result of Papst's breach of the ExcelStor Agreement, ExcelStor has been damaged in an amount to be determined at trial, but in excess of $7,989,360.

## FOURTH CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing)

32. ExcelStor repeats and realleges each of the allegations set forth in Paragraphs 1 through 31 of this Complaint as if fully set forth in this Paragraph.

33. Papst unfairly interfered with ExcelStor's right to receive the benefits of the ExcelStor Agreement, including receiving notice that Hitachi had paid to Papst a royalty for Hitachi-ExcelStor Contract Drives and receiving reimbursement for royalty payments made for Hitachi-ExcelStor Contract Drives to the extent that Papst had previously received royalty payments from Hitachi.

34. As a direct and proximate result of Papst's unfair interference with ExcelStor's right to receive the benefits of the ExcelStor Agreement, ExcelStor has been damaged in an amount to be determined at trial, but in excess of $7,989,360.

## FIFTH CAUSE OF ACTION

(Fraudulent Concealment)

35. ExcelStor repeats and realleges each of the allegations set forth in Paragraphs 1 through 34 of this Complaint as if fully set forth in this Paragraph.

36. During the negotiation of the ExcelStor Agreement, Papst, via its primary contract negotiators Jerold Schnayer and Tobias Kessler (among others), concealed from ExcelStor (via its contract negotiators Der-Chang Hsieh and Paul Loh) material provisions of the Hitachi License

Agreement. In particular, during the negotiation of the ExcelStor Agreement, Papst, via its primary contract negotiators Jerold Schnayer and Tobias Kessler (among others), concealed from ExcelStor (via its contract negotiators Der-Chang Hsieh and Paul Loh) the material fact that Papst had entered into an agreement or expected to enter into an Agreement with Hitachi that in Papst's view would require ExcelStor to pay per-unit royalties to Papst for hard disk drive products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment, and that Papst therefore expected to collect and would insist on collecting royalties from ExcelStor for ExcelStor's manufacture of such products.

37. Papst concealed the information set forth in Paragraph 36 above with the intention to induce the false belief that Papst did not expect to collect and would not insist on collecting royalties from ExcelStor for products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment.

38. Given the nature of the information concealed, ExcelStor could not have discovered through reasonable inquiry that Papst expected to collect and would insist on collecting royalties from ExcelStor for products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment. ExcelStor reasonably relied on Papst's silence on this issue as a representation that Papst did not expect to collect and would not insist on collecting royalties from ExcelStor for products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment.

39. Given the materiality of the information, Papst had a duty to disclose that it expected to collect and would insist on collecting royalties from ExcelStor for products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment.

40. If ExcelStor had known that Papst expected to collect and would insist on collecting royalties from ExcelStor for products that ExcelStor contract manufactured for Hitachi and for which Hitachi had already made a lump-sum royalty payment, ExcelStor would not have entered into the ExcelStor Agreement.

41. As a direct and proximate result of its reliance on Papst's fraudulent concealment of

material facts, ExcelStor has been damaged in an amount to be determined at trial, but in excess of $7,989,360.

42. ExcelStor is informed and believes that Papst's fraudulent concealment of material facts was deliberate and willful in view of Papst's knowledge of the Hitachi License Agreement, Hitachi's lump sum royalty payment to Papst, and the ExcelStor Agreement.

43. As a direct and proximate result of Papst's misrepresentations and fraudulent concealment of material facts, ExcelStor has been damaged in an amount to be determined at trial, but in excess of $7,989,360.

## PRAYER FOR RELIEF

WHEREFORE, ExcelStor requests entry of judgment in its favor and against Papst as follows:

A. Declaring that each of the Papst HDD Patents is unenforceable due to patent misuse;

B. Declaring that the ExcelStor Agreement is illegal and void insofar as it purports to require ExcelStor to pay royalties for Hitachi-ExcelStor Contract Drives or other HDDs that ExcelStor "contract manufactures" for its customers for which royalties have already been paid, or to the extent it purports to require ExcelStor to pay patent royalties for product manufactured and sold in countries in which Papst has no patent protection,, and directing Papst to reimburse ExcelStor in full for the royalties paid by ExcelStor to Papst in connection with that Agreement, which amounts exceed $10,600,000;

C. Awarding ExcelStor damages in an amount adequate to compensate ExcelStor for Papst's breach of contract, breach of implied covenant of good faith and fair dealing and fraudulent concealment in an amount to be proven at trial, but not less than $7,989,360;

D. Awarding ExcelStor pre- and post-judgment interest;

E. Awarding ExcelStor the costs incurred in this action, together with reasonable attorneys' fees;

F. Awarding ExcelStor punitive damages in an amount to be proven at trial; and

G. Granting such other and further relief as the Court deems just and proper.

Dated: July 31, 2009

CARR & FERRELL *LLP*

By: /s/ Kenneth B. Wilson
KENNETH B. WILSON
CHRISTOPHER P. GREWE

Attorneys for Plaintiffs
EXCELSTOR TECHNOLOGY, INC.,
EXCELSTOR TECHNOLOGY LIMITED,
EXCELSTOR GROUP LIMITED,
EXCELSTOR GREAT WALL TECHNOLOGY LIMITED and SHENZHEN EXCELSTOR TECHNOLOGY LIMITED

**DEMAND FOR JURY TRIAL**

ExcelStor hereby demands trial by jury of all issues so triable.

Dated: July 31, 2009

CARR & FERRELL *LLP*

By: /s/ Kenneth B. Wilson

KENNETH B. WILSON
CHRISTOPHER P. GREWE

Attorneys for Plaintiffs
EXCELSTOR TECHNOLOGY, INC.,
EXCELSTOR TECHNOLOGY LIMITED,
EXCELSTOR GROUP LIMITED,
EXCELSTOR GREAT WALL TECHNOLOGY LIMITED and SHENZHEN EXCELSTOR TECHNOLOGY LIMITED