UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EXCELSTOR TECHNOLOGY, INC., et al.,

    Plaintiffs,

    v.

PAPST LICENSING GMBH & CO. KG,

    Defendant.

_____/

No. C 09-2055 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion for an order dismissing the second amended complaint came on for hearing before this court on February 24, 2010. Plaintiffs appeared by their counsel Kenneth B. Wilson and Christopher Grewe, and defendant appeared by its counsel Leonard Friedman and Jerold B. Schnayer. Following the hearing, the parties submitted supplemental briefing. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

**BACKGROUND**

This is an action seeking a declaratory judgment of patent unenforceability and non-infringement, and also alleging state law claims.

Plaintiffs ExcelStor Technology, Inc.; ExcelStor Technology Ltd.; ExcelStor Group Limited; ExcelStor Great Wall Technology Limited; and Shenzhen ExcelStor Technology Limited (collectively, "ExcelStor") are in the business of designing, developing, manufacturing, and distributing hard disk drive ("HDD") products, primarily in China. ExcelStor also acts as the "contract manufacturer" for various companies, including Hitachi Global Storage Technologies Singapore Ltd., and its affiliates Hitachi Data Systems and

Hitachi, Ltd. (collectively, "Hitachi"). Defendant Papst Licensing GmH & Co. KG ("Papst") is the assignee of, or holds licenses to, a number of patents relating to HDDs ("the Papst HDD patents").

ExcelStor alleges that in 1998 and again in 2004, Papst entered into royalty licensing agreements with Hitachi and/or a predecessor-in-interest of Hitachi's HDD business, for some or all of the Papst HDD Patents.

In July 2002, Papst filed suit against a number of defendants including ExcelStor Technology Ltd., Shenzhen ExcelStor Technology Ltd., and ExcelStor Technology, Inc., in the Central District of California, alleging infringement of the Papst HDD patents ("the ExcelStor lawsuit"). The accused products in the ExcelStor lawsuit included products that ExcelStor had manufactured under contract for Hitachi.

In January 20, 2004, Papst and ExcelStor entered into a written agreement to settle the ExcelStor lawsuit ("the ExcelStor Agreement"). The ExcelStor Agreement provided that ExcelStor would make royalty payments to Papst on each HDD that ExcelStor made or sold through the expiration date of the Papst HDD patents in exchange for a license to the Papst HDD patents. The ExcelStor Agreement also provided that ExcelStor would pay a per-unit royalty for each HDD that ExcelStor "contract manufactures" for its customers (such as Hitachi), and covered products manufactured or sold by any ExcelStor entity any place in the world (even where Papst had no patent protection).

In addition, however, the ExcelStor Agreement required Papst to give ExcelStor written notice on a quarterly basis as to whether Papst had been paid a royalty by anyone other than ExcelStor for the HDDs that ExcelStor "contract manufactures" for ExcelStor customers. In the event that Papst received any such royalties, Papst was obligated to reimburse ExcelStor for those royalty payments.

ExcelStor alleges that following the execution of the Excelstor Agreement, Papst collected nearly $8 million in royalties from ExcelStor for products that ExcelStor had manufactured for Hitachi, and for which Hitachi had already paid royalties to Papst. ExcelStor claims that Papst failed to provide the required quarterly written notice that it had

collected double royalties, and that Papst did not reimburse ExcelStor for the royalty payments it made for products manufactured for Hitachi, as mandated by the ExcelStor Agreement. In addition, ExcelStor asserts that Papst collected significant patent royalties from ExcelStor for products that ExcelStor manufactured and sold in countries in which Papst has no patent protection.

ExcelStor claims that Papst has filed numerous lawsuits and/or sent threatening letters to companies representing virtually the entire HDD industry, in an attempt to enforce its HDD patents. ExcelStor claims that in California alone, Papst filed at least six lawsuits during the period 1994 to 2005 (including the ExcelStor Lawsuit), asserting infringement of its HDD patents, and has named as defendants companies located both within and without California.

ExcelStor alleges that prior to filing the present lawsuit in May 2009, it believed that Papst's HDD patents were unenforceable because of Papst's patent misuse in unlawfully coercing certain patent royalties from ExcelStor. However, ExcelStor asserts, Papst has claimed and continues to claim a right to royalties under those patents. As a result, ExcelStor claims, it reasonably believed that Papst would have filed suit against it for patent infringement if it had refused to make royalty payments to Papst.

In the second amended complaint, filed November 20, 2009, Excelstor asserts a claim under the Declaratory Judgment Act, seeking a judicial declaration of patent unenforceability and non-infringement because of patent misuse, based on Papst's alleged collection of double royalties (royalties from both ExcelStor and Hitachi for the same products), and on the collection of royalties for the manufacture and sale of products in countries in which Papst has no patent protection.

ExcelStor claims that by improperly collecting royalties to which it was not entitled, Papst has impermissibly broadened the physical or temporal scope of the patent grant for the Papst HDD Patents with anticompetitive effect, thereby rendering Papst HDD Patents unenforceable due to patent misuse. ExcelStor also asserts six supplemental state law claims.

3

ExcelStor asserts jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, alleging that the claim for declaratory relief of patent unenforceability arises out of the patent laws of the United States, and that the remaining claims are so related to the patent unenforceability claim that they form part of the same case or controversy under Article III.

Papst now seeks an order dismissing the SAC for lack of subject matter jurisdiction, and for lack of personal jurisdiction, and also seeks an order dismissing the first and third through seventh causes of action for failure to state a claim. Because ExcelStor has failed to establish that the declaratory judgment cause of action arises under federal law, and because the court finds that the action must be dismissed on that basis, the court does not address the remaining arguments made by Papst in support of its motion to dismiss.

**DISCUSSION**

A.  Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). The party asserting jurisdiction bears the burden of demonstrating that a cause lies within the limited jurisdiction of the federal courts. See id. at 376-78; see also Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(1) provides a court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should, as this court does here, consider the Rule 12(b)(1) motion first. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 84 (1998); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 575 (1999).

B.  Defendant's Motion

Papst argues that ExcelStor has not met, and cannot meet, its burden of showing that its cause of action for declaratory relief was asserted in anticipation of a patent

4

infringement claim, and that the court therefore lacks federal question jurisdiction.

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration" so long as the declaration is sought "in a case of actual controversy within the Court's jurisdiction." 28 U.S.C. § 2201(a). The Declaratory Judgment Act creates a federal remedy, but does not provide an independent basis for federal jurisdiction. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). Before declaratory relief can be granted, federal subject matter jurisdiction requirements must be satisfied. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Thus, actions for declaratory relief either must be between parties of diverse citizenship, or must "arise under" federal law.

Here, because some of the ExcelStor entities are foreign corporations, and the sole defendant, Papst, is also a foreign corporation, there is no diversity jurisdiction. 28 U.S.C. § 1332(a)(2)-(4); see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991 (9th Cir. 1994) (diversity jurisdiction does not encompass foreign plaintiff suing foreign defendants; presence of citizen defendant does not save jurisdiction as to alien defendant in action brought by alien plaintiff); Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2010) §§ 2:344-345, 2:349. Accordingly, it is ExcelStor's burden to establish that the declaratory judgment cause of action "arises under" federal law.

Ordinarily, the question whether an action "arises under" federal law is determined by applying the well-pleaded complaint rule. However, in declaratory relief actions, whether the claim "arises under" federal law is determined by the nature of the underlying coercive claim – the claim that the declaratory judgment defendant may assert against the declaratory judgment plaintiff. See Franchise Tax Bd, 463 U.S. at 19; Speedco, Inc. v. Estes, 853 F.2d 909, 912 (Fed. Cir. 1988).

Thus, the court must determine whether the first cause of action under the Declaratory Judgment Act involves an actual "case or controversy" – that is, whether there is a "substantial controversy, between parties having adverse legal interests, of sufficient

5

immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). The dispute must be "definite and concrete, touching the legal relations having adverse legal interests" and it must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character," as opposed to "an opinion advising what the law would be upon a hypothetical set of facts." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937), quoted in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

As the party asserting declaratory judgment jurisdiction, ExcelStor bears the burden of establishing the reality and immediacy of its exposure to liability for infringing a Papst patent. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F. 3d 1340, 1344 (Fed. Cir. 2007). That is, ExcelStor must show that the facts alleged, "under all the circumstances," demonstrate a "substantial" controversy of "sufficient immediacy" to warrant a declaratory judgment. MedImmune, 549 U.S. at 127 (quoting Maryland Cas. Co., 312 U.S. at 273)). An actual controversy must exist through all stages of the litigation, not only at the time the declaratory action is filed. Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974).

As a general matter, Papst contends that ExcelStor's failure to pay royalties may expose it to liability for breach of contract, but asserts that ExcelStor had failed to demonstrate potential liability for patent infringement. Papst contends that ExcelStor has not identified any particular HDD model that it is making or selling that is being sold in the United States, and has not identified any HDD model that might even colorably be covered by the elements of a particular claim of a Papst patent that will still be in force when that specific HDD model will be sold. Papst argues that the declaratory relief sought here will be an advisory opinion without reference to a specific product that will be accused of infringement.

Papst contends that under Benitec, the indefinite possibility of some product in the future is insufficient, and that there can be no immediate and real anticipation of a patent infringement claim where the declaratory judgment plaintiff is not making or selling an arguably infringing product. Papst asserts that ExcelStor has not alleged that Papst has

6

accused any of ExcelStor's products of infringement in over six years, and has alleged only that Papst has taken the position that ExcelStor is contractually obligated to pay royalties.

Papst argues that the lack of evidence that a declaratory defendant believes or plans to assert that a declaratory plaintiff's product infringes its patents creates a high barrier to meeting the declaratory judgment standard. Without such evidence, the definiteness of any potential controversy is diminished because the court would have no way of knowing which of numerable claims in numerous patents the declaratory defendant could or might assert against the declaratory plaintiff.

Papst contends further that shortly before the hearing on the present motion, it learned that ExcelStor has left the HDD industry, and that it did so before it filed the SAC. Thus, Papst argues, as ExcelStor is no longer making or selling HDDs, it cannot have an immediate and real anticipation of a patent infringement claim. Moreover, Papst asserts that ExcelStor cannot show any risk of exposure to liability for infringing the Papst HDD patents because Papst has covenanted not to sue ExcelStor for patent infringement. Following the hearing on the present motion, Papst filed a formal "Covenant with Respect to ExcelStor," in which it stated as follows:

> Reserving its right to sue ExcelStor for breach of contract, Papst covenants that it will not sue ExcelStor for patent infringement based on 1) any activity that is protected from potential infringement liability by the January 2004 Papst/ExcelStor agreement; or 2) should Papst cancel that agreement, any activity that would have been so protected if Papst had not cancelled that agreement. Papst further covenants not to sue ExcelStor for patent infringement of Papst's Hard Disk Drive Patents, as that term is defined in paragraph seven of the Second Amended Complaint, based on ExcelStor's past sale of any devices to Iomega. The term "ExcelStor" refers to any of the plaintiffs in the captioned action, and the term "Papst" refers to the defendant Papst Licensing GmbH & Co. KG.

Papst asserts that because ExcelStor appears to have left the HDD business, and also because Papst has covenanted not to sue ExcelStor, as indicated above, ExcelStor cannot demonstrate a "substantial" controversy of "sufficient immediacy" to warrant a declaratory judgment.

Whether a covenant not to sue will divest the trial court of jurisdiction over a declaratory judgment cause of action "depends on what is covered by the covenant."

Revolution Eyeware, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009). A covenant not to sue that covers current products, including products sold after the covenant, may eliminate any actual controversy. Id. at 1297-98. However, a covenant's failure to address potential future products does not suffice to create an actual controversy if those products are not yet in existence and are not included in the charge of infringement. See id. at 1297.

Here, ExcelStor asserts, the covenant not to sue does not eliminate potential claims by Papst for infringement of the patents-in-suit for current or future sales of non-HDD products like the Iomega REV to Iomega, or for current or future sales of non-HDD products like the Iomega REV to entities other than Iomega; and does not eliminate potential claims once the license agreement expires by its terms in December 2010. ExcelStor also contends that the covenant does not eliminate the court's jurisdiction to decide whether the patents are unenforceable under ExcelStor's request for attorney's fees under 35 U.S.C. § 285.

In support of its opposition to the motion to dismiss, ExcelStor submitted a declaration by its representative Der-Chang Hsieh, stating that ExcelStor had sold HDD products in the United States, including products covered by Papst's HDD patents, and had paid royalties to Papst on such products. In support of its supplemental brief filed after the hearing on the present motion, ExcelStor submitted a second declaration by Mr. Hsieh, stating that ExcelStor currently has "thousands of hard disk drives in inventory," that it previously paid Papst royalties for the sale of such HDDs, and that it also has "Iomega Rev components in its inventory." In addition, Mr. Hsieh asserted, ExcelStor "is still doing repair work, warranty work and replacement work" on HDDs and "related products," and that "[d]epending on legal and market conditions, ExcelStor may continue its manufacture and sale of additional ExcelStor hard disk drives and/or products similar to the Iomega Rev in the future."

The court finds that ExcelStor has not met its burden of establishing a "substantial controversy" of "sufficient immediacy" to warrant a declaratory judgment. First, ExcelStor

has not refuted Papst's contention that ExcelStor has left the HDD industry. In addition, Mr. Hsieh does not state in either of his declarations that ExcelStor is still making or selling HDDs, Iomega REVs, or any products, or that it intends to do so in the future – rather, he merely asserts that ExcelStor "may" do so. While he does state that ExcelStor retains a few thousand units of product, he does not identify them, does not state that they are operational, does not state how long they have been in inventory, and does not state that they are still marketable in an industry in which models evolve every year.

Nor has ExcelStor identified any product that it makes or sells that has been accused of infringing a Papst HDD patent, or explained why any particular product might be accused of infringing any particular Papst HDD patent. ExcelStor focuses its argument on the Iomega REV product, even though it does not allege that that product was ever accused of infringement (and indeed, claims that the product is not even an HDD).

A covenant not to sue for infringement will not divest the court of declaratory judgment jurisdiction where, notwithstanding the covenant, the patentee "has engaged in a course of conduct that shows preparedness and willingness to enforce its patent rights" despite that statement. Revolution, 556 F.3d at 1297 (citing SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1383 (Fed. Cir. 2007)). Declaratory judgment jurisdiction may be met when the patentee "puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." SanDisk, 480 F.3d at 1381.

Here, however, ExcelStor has provided no evidence (or even any allegation) that it will make or sell any particular product that will expose it to liability for infringement of a particular Papst HDD patent. By contrast, in Revolution, the case relied on by ExcelStor, there was evidence that the defendant Aspex expressly intended to reintroduce into the marketplace within a few months the very product that had been the basis for the patent infringement suit that the plaintiff Revolution had filed against Aspex. Revolution, 556 F.3d at 1295-96.

Because the covenant not to sue is sufficient to preclude a finding of possibility of

9

future claims of patent infringement, the court finds, under all the circumstances, that sufficient immediacy and reality do not exist to support declaratory judgment jurisdiction. See Benitec, 495 F.3d at 1348-49.  ExcelStor's vaguely articulated defined intent to sell HDD products in the future does not meet the immediacy and reality requirement.  See Revolution, 556 F.3d at 1298 (citing Benitec, 495 F.3d at 1346).

Nor does ExcelStor's request for attorney's fees pursuant to 35 U.S.C. § 285 create subject matter jurisdiction.  Under § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  However, the second amended complaint does not cite § 285 in the prayer for relief as a basis for jurisdiction, does not allege that this is an exceptional case, and does not mention § 285 except in the prayer for relief. Moreover, as ExcelStor has not established that it faces real and immediate exposure to an infringement claim, the declaratory judgment cause of action does not create federal jurisdiction, and ExcelStor therefore cannot be the prevailing plaintiff within the meaning of § 285.

Finally, having dismissed the declaratory judgment claim, the court cannot exercise supplemental jurisdiction over the state law claims, and the entire action must be dismissed.  See Scott v. Pasadena Unified Sch. Dist., 306 F. 3d 646, 664 (9th Cir. 2002) (court has no discretion to retain supplemental jurisdiction over state law claims where federal claim is dismissed for lack of subject matter jurisdiction); see also Schwarzer, et al., §§ 2:145, 2:145.2a.

## CONCLUSION

In accordance with the foregoing, the court finds that the action must be DISMISSED for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: June 22, 2010

PHYLLIS J. HAMILTON
United States District Judge